IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:24-cv-00902-SKC-MDB

AEMITA RAMSEY,

    Plaintiff,

v.

STATE FARM FIRE AND CASUALTY COMPANY,

    Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF JACK ROOK, M.D., PURSUANT TO FED. R. EVID. 702 (DKT. 22)**

---

The above-referenced Motion is before the Court. Dkt. 22. In her Rule 26(a)(2)(B) disclosures, Plaintiff Aemita Ramsey disclosed Jack Rook, M.D., to offer opinions regarding causation. Defendant State Farm Fire and Casualty Company seeks to preclude these opinions under Fed. R. Evid. 702. The Court has jurisdiction under 28 U.S.C. § 1332(a).

## BACKGROUND

This case arises from a three-car accident that occurred on October 15, 2022, in which Plaintiff's vehicle was the second in line to be struck through no fault of her own. Plaintiff subsequently made a claim for underinsured motorist (UIM) benefits with her insurance carrier, Defendant State Farm, for her claimed losses arising from

1

the accident. In this lawsuit, Plaintiff sues Defendant bringing two claims for relief: (1) a first-party statutory bad faith claim under Colo. Rev. Stat. §§ 10-3-1115 and 1116; and (2) breach of contract.

Plaintiff's primary claimed injury is a collapsed lung, also known as a pneumothorax, which she alleges was caused by the accident. The parties dispute causation and have engaged competing expert witnesses on the issue. Plaintiff's expert, Dr. Rook, is board certified in physical medicine and rehabilitation; electrodiagnosis; pain medicine; and addictive medicine. Dkt. 22, Exh. E. Defendant seeks to exclude Dr. Rook's proposed testimony in its entirety, including these specific opinions offered in his report:

- Ms. Ramsey sustained acute trauma to her chest when she was involved in the motor vehicle accident on October 15, 2022. Her vehicle was rear ended and she sustained a whiplash injury. When she was thrown forward, her seatbelt caught. She was then thrown backwards into her seat and struck her head on the headrest. The catching of her seatbelt applied pressure over her left shoulder and left upper chest. **This undoubtedly caused a transient increase of left sided intrathoracic pressure. This caused acute compression of her left lung, thereby increasing pressure throughout the air passages of that lung. Given her underlying emphysematous condition associated with apical blebs, she was at greater risk than the average population to rupture this weakened pulmonary tissue.** *Id.*, p.4 (emphasis in the Motion).

- It is my opinion that the pneumothorax that developed on October 15, 2022 was related to the patient's motor vehicle accident on that date . . . Additionally, I believe that the acute pneumothorax that developed on that date compromised the patient's lung further to the point that within one month she developed another significant pneumothorax on the left. If not for the motor vehicle accident injury to her lung tissue, I do not believe that she would've had the

2

> recurrent pneumothorax that developed in November 2022. Due to the second pneumothorax, the patient required the thoracic pleurodesis procedure. Given this information, I believe that all of the treatment she received associated with the pneumothoraces that developed in October and November 2022 is related to her motor vehicle accident of October 15, 2022. *Id.*

- Dr. Rook's diagnosis of "[t]he patient's motor vehicle accident-related" conditions. *Id.*

- Dr. Rook's opinions regarding Plaintiff's permanent impairment. *Id.*

Defendant argues two primary reasons for excluding Dr. Rooks' opinions: (1) Dr. Rook is not qualified to offer causation opinions related to Plaintiff's pneumothorax; and (2) he did not have sufficient facts or data to support his opinions, and his methodology in reaching his causation opinions was not reliably applied to the case at hand. *Id.* Plaintiff responds largely and simply that Dr. Rook is qualified by education and experience to render his causation-opinion. *See* Dkt. 26, p.6 ("Also Dr. Rook has treated many patients injured in automobile collisions and is familiar through this work with the forces sustained by persons involved in automobile collisions. This includes the forces applied to an occupant's chest which would compress the chest and potentially increase air pressure inside the lungs. Based on his experience and education Dr. Rook is qualified to give these opinions."); *id.*, p.7 ("Given Dr. Rook's education and experience as a treating physician he is familiar with the frequency of the occurrence of pneumothoraxes and the circumstances of when they occur and do not occur. Dr. Rook is qualified to testify regarding the

3

frequency of when pneumothoraxes occur in persons with no pre-existing lung conditions that are involved in rear end automobile collisions.").

The Motion is fully briefed. *See also* Dkt. 29 (Defendant's Reply). The Court has carefully considered the parties' filings, applicable law, and pertinent matters from the docket. No hearing is necessary. The Motion is denied for the reasons explained next.

## LEGAL PRINCIPLES

"The proponent of expert testimony bears the burden of showing that the testimony is admissible." *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013). A witness who qualifies as an expert by knowledge, skill, experience, training, or education may offer their opinions at trial if the proponent satisfies the court that it is more likely than not that: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702; *see also United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

Trial courts determine the reliability of expert testimony by considering whether: (1) the theory has been or can be tested or falsified; (2) the theory or technique has been subject to peer review and publication; (3) there are known or potential rates of error regarding specific techniques; and (4) the theory or approach

4

has general acceptance. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2005) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-94 (1993)); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999). And of course, expert testimony must also be relevant to be admissible. *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1082 (D. Colo. 2006); Fed. R. Evid. 401.

The district court performs an important gatekeeping function to assure expert testimony meets these requirements. *Macsenti v. Becker*, 237 F.3d 1223, 1230-34 (10th Cir. 2001). Even still, courts are mindful that "Rule 702 mandates a liberal standard" for the admissibility of expert testimony. *Cook*, 580 F. Supp. 2d at 1082. The rejection of expert testimony has proven "the exception rather than the rule." Fed. R. Evid. 702, advisory committee notes (2000 amendments). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The decision to admit or exclude expert testimony is committed to the sound discretion of the district court. *Summers v. Missouri Pacific Railroad System*, 132 F.3d 599, 603 (10th Cir. 1997).

If an expert is sufficiently qualified then "the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology." *Nacchio*, 555 F.3d at 1241. "Reliability questions may concern the expert's data, method, or his application of the method to the data." *Id.* An expert's conclusions must be based on the "methods and procedures of science," not on

5

"subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590. Thus, the focus of reliability is "solely on principles and methodology, not on the conclusions that they generate." *Id.* at 595.

## ANALYSIS AND FINDINGS

Plaintiff is correct that a witness may be qualified as an expert based on their qualifications and experience—Rule 702 makes the point explicit. Fed. R. Evid. 702 ("A witness who is qualified as an expert by . . . experience . . . may testify in the form of an opinion[.]"). But "[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id.* (advisory committee note to the 2000 amendments). Proper exercise of a court's gatekeeping function does not allow a court to simply take the expert at their word. *Id.* To be sure, Rule 702 expressly provides that expert opinion be based on "sufficient facts or data." Fed. R. Evid. 702(b). "Thus, the proponent of expert testimony must show that the witness' experience, and resultant specialized knowledge, is sufficiently related to the issues and evidence." *Vigil v. Burlington N. & Santa Fe Ry. Co.*, 521 F. Supp. 2d 1185, 1204 (D.N.M. 2007).

In opposing the Motion, Plaintiff's response mostly contends, in different ways, that Dr. Rook's opinions are based on his experience and that he is qualified, based on his experience, to render these opinions. *See generally* Dkt. 26. There are at least two problems with this argument.

6

First, Plaintiff has not established that Dr. Rook's experience sufficiently qualifies him to offer these opinions in this case. Dr. Rook's board certifications are in physical medicine and rehabilitation; electrodiagnosis; and pain and addictive medicine. As Defendant points out, at his deposition, Dr. Rook testified that as a physiatrist, he does not typically treat pneumothorax; he has not published anything related to collapsed lungs; he has not presented on pneumothorax or collapsed lungs; and while he routinely opines on causation of medical conditions, he has never opined on the causation of a pneumothorax. Dkt. 22, p.8 (citing deposition transcript excerpts). While an expert need not be specialized within a particular subject area, to qualify as an expert, a proposed witness must possess "such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth." *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004) (quoting *Graham v. Wyeth Labs.*, 906 F.2d 1399, 1408 (10th Cir. 1990)). And ultimately, proposed testimony must "fall within the reasonable confines of [the witness's] expertise." *Conroy v. Vilsack*, 707 F.3d 1163, 1169 (10th Cir. 2013) (citations and quotations omitted). Dr. Rook's experience and knowledge relating to causation of pneumothorax from force events to the chest is lacking, and he offered no explanation in either his report or his deposition testimony concerning how this opinion falls within the reasonable confines of his expertise beyond simply that he is experienced in opining on causation. This explanation weighs too thin.

7

Second, even if the Court assumed *arguendo* that Dr. Rook is qualified based on experience, the Court agrees with Defendant that the opinions lack sufficient or reliable methodology. Dr. Rook appears to base his causation opinion on two primary things. One is the pressure the seatbelt put over Plaintiff's left shoulder and left upper chest. Dkt. 22-4, p.9. But Dr. Rook testified in his deposition that he did not measure or review any materials concerning the forces applied to Plaintiff's chest in this collision; nor did he attempt to measure or quantify the transient increase of left-sided intrathoracic pressure that he believes caused Plaintiff's pneumothorax. Dkt. 22-6, depo. pp.39-40.

> The other is the temporal relationship. Dr. Rook opines that
>
> [f]rom a temporal relationship standpoint, I believe it is highly unlikely that the patient spontaneously ruptured a bleb in her left lung and that it had absolutely nothing to do with the acute increase of intrathoracic pressure associated with her accident and the mechanism described above. If this patient had a 40% pneumothorax prior to the motor vehicle accident, she would've been symptomatic, and she was not.

Dkt. 22-4, p.10. But, as before, beyond the temporal relationship, Dr. Rook offers no medical or scientific explanation of how this timing begets causation. And without more, a mere correlation does not equal causation. *See United States v. Valencia*, 600 F.3d 389, 425 (5th Cir. 2010) ("Evidence of mere correlation, even a strong correlation, is often spurious and misleading when masqueraded as causal evidence, because it does not adequately account for other contributory variables."); *Myers v. Leasure*, No. 2:19-cv-3523, 2019 WL 4861357, at *1 (S.D. Ohio Oct. 2, 2019) ("[W]ithout more, this is not enough as mere correlation does not imply causation."); *Small v. Amgen, Inc.*,

8

No. 2:12-476-PAM-MRM, 2017 WL 5444003, at *3 (M.D. Fla. Mar. 22, 2017), aff'd, 723 F. App'x 722 (11th Cir. 2018) ("[C]orrelation does not imply causation.").

This is particularly problematic when considering his deposition testimony. There, Dr. Rook acknowledged Plaintiff had been previously diagnosed with pneumothorax a few months before this collision, but he fails to address this prior diagnosis in reaching his causation opinion:

> Q. I want to direct your attention to the third finding there. Can you read that out loud?
> A. "Small/moderate left pneumothorax slightly more prominent than on exam of August 24, 2022."
> Q. So whoever was interpreting this imaging actually did go and review the August 2022 imaging, it appears, as well, right?
> A. Yes.
> Q. And they noted there was a pneumothorax on that image?
> A. Yes.
>                 *     *     *
> Q. So having reviewed this, would you agree that there was a pneumothorax present in August of 2022?
> A. In August? Yeah, I would, but it appears that it's significantly worse on October 15th, 2022. And the CT scan mentions a 40 percent pneumothorax, which is quite significant. So X-rays and CT scans provide differing specificity in the area.
>                 *     *     *
> Q. Well, you opined in your report that Ms. Ramsey did not have a pneumothorax before this accident, right?
> A. Well, that was based on the radiology report.
> Q. And we've since looked at subsequent radiology reports, which indicate there was, in fact, pneumothorax in August of 2022, right?
> A. Right. But I didn't have that report at the time of my evaluation. Either way, it's a change from a negligible finding on a chest X-ray to a 40 percent.
> Q. Well, you haven't reviewed either of -- any of the imaging, have you?
> A. No.

Dkt. 22-6, depo. pp.31:2-13, 32:2-11, 39:4-18.

This testimony highlights that Dr. Rook's opinions fail to account for the fact that Plaintiff had a pneumothorax in August 2022, almost two months before the accident. And by ignoring this fact and not accounting for it in his opinions regarding causation, his opinion is not based on sufficient facts, data, or methodology to render them reliable. *See Maraldo v. United States,* No. 23-10577, 2025 WL 952475, at *6 (E.D. Mich. Mar. 28, 2025) ("Each doctor's unfamiliarity with Maraldo's medical history and their stated assumptions show that their opinions are not based on sufficient facts or data and that their opinions are not the product of reliable principles and methods."); *Rhoads v. Hanco Int'l,* No. 02-CV-1018-D, 2003 WL 25685521, at *2 (D. Wyo. Jan. 24, 2003) (rendering five different experts' causation testimony inadmissible where none of them "suggest that they have come to their respective causation opinions based upon a methodology that had been tested, subjected to peer review, and generally accepted in their medical community[,]" and they failed to do a differential diagnosis).

Federal courts routinely exclude as unreliable expert opinions that are based solely on the expert's experience and which lack any methodology. *See, e.g., Dominguez v. Lubbock*, No. CIV-11-1347-R, 2012 WL 9431886, at *2 (W.D. Okla. Sept. 21, 2012) ("Mr. Huff does not cite any specific facts or data on which his opinion that Plaintiff will have lost or has lost thirty percent (30%) of her work life expectancy if she does not receive retraining, nor does he explain the methodology or principles

10

employed to reach that conclusion."); *Miller v. Gorski Wladyslaw Est.*, No. 05-189, 2006 WL 3533113, at *4 (W.D. La. Dec. 6, 2006) ("[A]ll that has been offered to the court in support of the reliability of these estimates is Dr. Henderson's own assurance that based on his experience with other patients, the estimates made . . . are reliable."); *see also Erickson v. Baxter Healthcare, Inc.*, 131 F. Supp. 2d 995, 999 (N.D. Ill. 2001) ("To allow doctors to testify about specific statistical or medical questions and base their testimony only on general experience would be to say that doctors are qualified experts on every medical subject merely because they wear white coats.").

As one court explained, "[e]xperts are held to the same standards of 'intellectual rigor' in testimony as in their scholarly work." *Erickson*, 131 F. Supp. 2d at 1000 (citing *Kumho Tire Co.*, 526 U.S. at 152). "It would be unacceptable to cite no sources for statistical evidence in a scholarly work, and it is likewise unacceptable in an expert disclosure." *Id.* Dr. Rook's causation opinions are based on his experience and temporality without reference to any methodology, without any differential diagnosis, and without consideration of Plaintiff's prior pneumothorax only months before the collision. The Court finds Dr. Rook's opinions, therefore, are unreliable and they fail to satisfy Rule 702, and further, he is not sufficiently qualified to render opinions on the cause of Plaintiff's pneumothorax.

\*    \*    \*

For the reasons shared above, Plaintiff has not met her burden to show that Dr. Rook's opinion and proposed causation testimony satisfies the requirements of

11

Fed. R. Evid. 702. The Motion, therefore, is GRANTED and Dr. Rook's opinions regarding the cause of Plaintiff's pneumothorax and her "motor vehicle accident-related diagnoses" are stricken and inadmissible at trial.

It is unclear to the Court, however, whether Dr. Rook's opinions resulting in a permanent impairment rating are necessarily part-and-parcel of the above analysis. Therefore, the parties are ORDERED to confer over this issue and address it in the proposed Final Pretrial Order once that proposed order is due.

DATED: September 23, 2025.

BY THE COURT:

_____
S. Kato Crews
United States District Judge